CHARLES LEYENBERGER

v.

JAMES R. PAUL.

*Malicious Prosecution—Probable Cause—Agency—Practice—Evidence.*

1. A prosecution, terminated by a compromise between the prosecutor and the party charged, is not equivalent to the acquittal which must precede an action for a malicious prosecution. Such acquittal need not be such as to bar another prosecution, but it must be a judicial termination of that one, and if the result of a wilful or negligent failure to prosecute, is still

sufficient; but a *nolle prosequi* by consent, or by way of compromise, or where such exemption from further prosecution has been demanded as a right, or sought for as a favor, is not enough.

2. The discharge or acquittal must be by judicial action under such circumstances, as that the party accused has not avoided or prevented judicial investigation.

3. A sub-agent under contract with an agent of an insurance company, is not entitled, upon the collection of renewal premiums due the company, to withhold the same on account of a misunderstanding with such agent as to a balance claimed to be due. He should deduct his commission therefrom and pay the balance over.

4. In such case the company may maintain against such sub-agent an action on the case to recover such balance, in which action such sub-agent c in not set off anything due him on other matters.

5. There is probable cause for a prosecution for embezzlement, where complainant is advised by his attorney that defendant is guilty thereof, and believes him.

6. It is always a question for the jury in such case whether such advice was believed, and the motive of the prosecution is only important where the want of probable cause is proved.

7. The violation of an agreement between attorneys, to postpone a case, by the attorney for the defendant, who, without informing the magistrate of the agreement, procured a dismissal of the suit for want of prosecution, is enough to warrant a court of equity to enjoin the collection of a judgment at law, such violation resulting in injury.

8. This court reverses for excessive damages the judgment for the plaintiff in an action for malicious prosecution.

[Opinion filed May 5, 1891.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Mr. C. STUART BEATTIE, for appellant.

Mr. E. A. SHERBURNE, for appellee.

GARY, J. This is the fourth time this case has been here. 12 Ill. App. 635; 17 Ill. App. 167; 25 Ill. App. 480. No discussion of the real merits of the case is in any of the opinions there reported.

On the last appeal it was said that this court was not "entirely satisfied" that there was a want of probable cause for the criminal prosecution, to recover damages for which

this action was brought.  Whether, there was evidence of the other elements of such a cause of action, is not alluded to in either report.

The relation between these parties existed by written agreements.  The first is:

"CHICAGO, September 9, 1878.

"J. R. PAUL, ESQ.,

"*Dear Sir:*  This is to certify that I have this day agreed to pay you on all business which you bring hereafter to this company, the following rates of commission: Thirty per cent of the first premium, and a renewal commission of four per cent on four year premiums.

"Very truly,

"C. LEYENBERGER, State Agent."

"I hereby agree to pay above commission to the heirs of James R. Paul should he die."

(On the back:)  "Should you at any time discontinue your work for this company, said commission to be paid to whom you may direct."

The second:

"CHICAGO, January 16, 1880.

"Agreement by and between Charles Leyenberger of the first part and James R. Paul, of the second part, both parties living in Chicago.  Mr. Leyenberger agrees to continue the old contract with J. R. Paul, just the same as last year, which is thirty per cent of the first premium and for four fours, with all the agreements in the contract.

"Also, he is to let J. R. Paul have $200 and charge it to him in a separate account by itself, and it is to stand there, Paul not to be called on for it only as his four fours come in on the past fifteen months business, and as fast as they come in there to be placed to J. R. Paul account.  And that J. R. Paul is to have $50 at any time in addition to the two hundred, and is to have it on the same agreement, Paul not to have it before March, and not to call for it if he can get along without it.

"Leyenberger to pay Paul $60 per month if he shall call for it, $15 a week, $30 twice a month, or $60 at the end of

the month, and to continue for the term of a year. If Paul's commissions exceed $60 a month during the year, he has the right to draw all over $60. Paul to work for M. B. L. I. C., and get all the policies he can for the company."

"J. R. PAUL,

"C. LEYENBERGER."

And the last is:

"THE MUTUAL BENEFIT LIFE INSURANCE COMPANY, of Newark, N. J.

"Lewis C. Grover, President,

"Charles Leyenberger, State Agent, 5 Tribune Building.

"CHICAGO, May 5, 1881.

"JAMES R. PAUL, ESQ., Chicago, Ill.

"*Dear Sir:* I hereby agree to pay you upon business you may secure in future a commission at thirty per cent on first annual premium, and a renewal commission of four per cent on the four subsequent renewals of the same. Above rates to apply on all policies excepting ten and fifteen yr. endts., five payments life and single premiums.

"Very truly yours,

"C. LEYENBERGER, State Agent."

"The above to cover all business taken by said Paul since February 1, 1881.

"LEYENBERGER."

No question arose between the parties as to the meaning of these writings until the 8th of October, 1881. Paul had received $60 per month, or $720, under the last paragraph of the second agreement. If that $60 per month was a fixed salary, regardless of commissions earned, Leyenberger owed Paul $94.27; if it was an advance upon commissions to be earned, then Paul owed Leyenberger $292.79. Each party insisted upon the position most favorable to his own interest, but no settlement was made, nor does it appear that any ill feeling arose.

Two renewal premiums amounting to $82.65 became due November 27th and December 2, 1881, from policy holders at the stock yards, on which Paul was entitled to four per cent.

He was in the habit of collecting renewal premiums. He went to the office of Leyenberger and obtained the renewal receipts, saying he was going to the stock yards; collected the money and refused to pay it over without a settlement of the accounts. Now, it is clear law that he ought to have paid over that money, deducting only his commission at four per cent thereof. The money belonged to the insurance company. If Paul had any claim upon Leyenberger for salary he was to call on him for it.

The insurance company might have maintained an action on the case against him for not paying it over, in which action he could not have set off anything due to him on other matters, even if his construction of the written agreements is the right one. 1 Ch. Pl., Ed. 1883, page 151; Ashley v. Root, 4 Allen, 504; Tinkham v. Heyworth, 31 Ill. 519; Rae v. Hulbert, 17 Ill. 572; 1 Ch. Pl., same ed., 112.

In such an action, a *capias ad satisfaciendum* might be the final process upon which imprisonment might follow failure to pay. Now, if Paul took the renewal receipts, intending to withhold the money collected upon them, his conduct differs from embezzlement, as wilful trespass *de bonis asportatis* differs from larceny. The furtive, clandestine element is lacking. Under these circumstances, Leyenberger consulted an attorney. The attorney, from Leyenberger and his own investigations, (Brown v. Smith, 83 Ill. 291,) learned all the facts, and advised Leyenberger that Paul was guilty of embezzlement. If Leyenberger believed that advice, there was probable cause for the prosecution. Cooley on Torts, 2d Ed., 212.

It is always a question for the jury whether the advice was believed, and in many cases it is loosely said that such advice is no protection if sought as a means of covering malice, as in Ames v. Snider, 69 Ill. 376. What is meant by that is shown in Ross v. Innis, 26 Ill. 260 — that the advice was not believed. Malice alone is not enough to ground the action upon. It is unnecessary to add anything upon that point to what was said in this case when it was here the first time. The motive of the prosecution is only important if the want of probable cause is proved. Both Leyenberger and the

attorney testified to the advice, and Leyenberger that he believed it.

Without deciding that the verdict of the jury ought to be set aside as against evidence on the want of probable cause, there is another aspect of the case in which the facts, as they existed independent of that advice, are to be considered.

The pecuniary condition of Leyenberger was proved. He had a home worth $20,000, incumbered for $7,000, and about $4.000 in other property. The verdict is for $2,700. The actual damages proved did not exceed $50. There was no imprisonment. Paul gave bail at once. The contracts between the parties were not for a salary, but commission.

True, the words are, " pay Paul $60 per month," but, also, "if he shall call for it, $15 a week, $30 twice a month, or $60 at the end of the month." Is it to be supposed that Paul was to have a salary amounting to $784.28 (1880 being a leap year) if he would call for it once a week, and but $720 if he called for it but twice a month, and that calling for it was a condition precedent?

·Besides, the first part of the contract is " to continue the old contract just the same as last year."

The only fair construction is, that the $15, $30 or $60 were to be advanced if Paul asked for them, on account of commissions to be earned; and such commissions were not to be applied to the repayment of the other $200 or $250 advanced. He had therefore no claim to a set-off against the premiums he withheld. To such a case the remarks of the Supreme Court of California, in Sears v. Hathaway, 12 Cal. 277, are not wholly inapplicable.

" The evidence as disclosed by the record " (says that court) " leaves little doubt of the moral guilt of the plaintiff's conduct, and the plaintiff's complaint seems to arise from the technical fact that this fraud was not evidenced by writing, and therefore, that his procuring goods of other persons without intention of paying for them, but to so appropriate them that neither the goods nor the proceeds could be reached by his creditors, was not, in the absence of some writing, a crime, for which he could be convicted under the statute.

"Conceding all this for the argument, and still the concession leaves the verdict wholly indefensible. A party who stands before a jury in such a case as this, on pure, technical law, for a defense against an act of moral turpitude, and claiming a discharge because his prosecutor has not pursued a statutory mode of proof to convict him of a crime punishable by the statute, may congratulate himself that the precautions of the law have availed him to escape its merited penalty; but he certainly ought not to have, in addition to this immunity, a right to claim a small fortune from his victim for having mistaken the remedy, or not being as well versed as himself in the technicalities which sometimes shield guilt from public justice. ⋅ If he was entitled to receive anything under the circumstances, he was entitled to recover nothing more than the actual damages which he sustained by the arrest." There is a hint of a similar view in Lowenthal v. Strong, 90 Ill. 74. One of the reasons assigned on a motion for a new trial, the denial of which was excepted to, was that the verdict was excessive. That reason was well assigned, and the new trial ought to have been granted.

Again: There was testimony that the attorneys on each side of the case, before the examining magistrate on the charge of embezzlement, had agreed, on account of other engagements of the attorney prosecuting, to a postponement of the hearing from the day originally set; that the attorney of Paul, in violation of that agreement, went before the magistrate, and, not informing him of the agreement, procured the dismissal of the charge for want of prosecution. This court has several times decided that a prosecution, terminated by a compromise between the prosecutor and the party charged, is not equivalent to the acquittal which must precede an action for a malicious prosecution. Rosenberg v. Hart, 33 Ill. App. 262.

Such acquittal need not be such as to bar another prosecution, but it must be a judicial termination of that one; and if the result of a wilful or negligent failure to prosecute, is still sufficient. But a *nolle prosequi* by consent, or by way of compromise, or where such exemption from further prosecution has been demanded as a right, or sought for as a favor,

is not enough. Parker v. Farley, 10 Cush. 279; Langford v. B. & A. R. R., 144 Mass. 431.

The principle of the cases is that the discharge or acquittal must be by judicial action, under such circumstances as that the party accused has not avoided or prevented judicial investigation. McCormick v. Sisson, 7 Cow. 415.

If, in this case, it be true that the prosecution was ended in the manner testified to, then there was no sufficient acquittal.

Such a violation of an agreement, resulting in injury, is enough to warrant a court of equity to enjoin the collection of a judgment at law. Weirich v. De Zoya, 2 Gilm. 385.

The judgment is reversed for excessive damages and the cause remanded.

*Reversed and remanded.*

MORAN, P. J. I am unable to concur in the foregoing opinion.