## MARTIN v. WAHL.—66 S. W. (2d) 608.

Eastern Section. June 10, 1933.

Petition for Certiorari denied by Supreme Court, January 13, 1934.

Anderson & Word and Kennerly & Key, all of Knoxville, for plaintiff in error.

Ely, Buhl & Ely, of Knoxville, for defendant in error.

SENTER, J.   For convenience, the parties will be referred to as in the court below, W. D. Wahl, plaintiff, and H. C. Martin, defendant.

This is an appeal from a judgment in favor of plaintiff against defendant for the sum of $2,000, in a malicious prosecution suit.

The declaration avers in substance that on or about the 6th day of January, 1928, the defendant, without probable cause, wrongfully and maliciously procured a justice of the peace in and for Knox county, Tennessee, to issue a warrant falsely charging plaintiff with the crime of removing an automobile which had been purchased from the defendant under a conditional sales contract from the State of Tennessee without the written consent of the defendant; and that the defendant did thereupon further, falsely, wrongfully, and wickedly cause the plaintiff to be arrested on said warrant and incarcerated in jail in the city of Houston, Texas, and that said prosecution was shortly thereafter ordered stopped by the District Attorney-General of Knox county, Tennessee, because said charge in said warrant was false and groundless, and that said criminal suit was thereby finally terminated. The declaration further averred in substance that, in November, 1927, the plaintiff, who is and has been all of his life a citizen and resident of Knox and Jefferson counties, Tennessee, purchased a Dodge automobile from the defendant, Martin, at a local dealer's, who was the agent of the defendant, Martin, in Knox county, Tennessee, at which time and place, and before said car was purchased of the defendant by the plaintiff, plaintiff fully advised the agent of the defendant who sold the car, the purposes for which he was buying said car, namely, that he might take the same out of the State of Tennessee and into other states for the purpose of exploiting and selling a certain patented electrical device, the patent rights to which plaintiff, with his associate, was then the owner for said certain states, and showed the defendant's agent at the time of the purchase the contract of ownership of the right to sell said device in certain states outside of Tennessee. The declaration further avers that the agent of defendant who sold the automobile in question to plaintiff and his associate knew and understood and consented that the car would be taken out of the State of Tennessee and used by plaintiff and his associate in connection with their business of exploiting and selling said patented device; and that a provision in the conditional sales note that the car would not be removed from Knox county, Tennessee, by the purchaser was stricken out of said contract by said agent at the time of the purchase, pursuant to the agreement with the agent that the car could be taken outside of the State of Tennessee by the purchasers to be used in the business aforesaid. The declaration further avers that plaintiff and his associate agreed to pay for said automobile the sum of $750, $150 of which was paid in cash at the time of the purchase, and a conditional sales contract and note executed by plaintiff and his associate payable to the defendant for the balance, which note was an installment note payable in monthly installments. The declaration averred that shortly after the purchase of the automobile plaintiff and his associate drove the automobile to the State of Texas, where they were engaged in the

business of selling and exploiting said electrical device and in attempting to establish the business; that, due to matters beyond the control of plaintiff, default was made in the next payment due on said car, and thereupon, after wickedly and wrongfully attempting to force or coerce the aged mother of plaintiff's associate, the mother-in-law of plaintiff, into paying or securing the entire amount of the indebtedness owing by plaintiff to the defendant, and failing in this, the defendant, further seeking to collect his debt, thereupon wrongfully and maliciously conceived the idea of charging plaintiff and his associate with the commission of the crime of taking said automobile without the State of Tennessee, without permission of the defendant in writing, etc., and thereupon, as aforesaid, the defendant wrongfully, wickedly, and maliciously, and for the purpose of collecting his civil debt, procured and had issued said warrant from said magistrate, falsely and wrongfully and without probable cause charging plaintiff and his associate with having been guilty of said crime, and by the use of telegrams procured the arrest of the plaintiff and his associate where they were peacefully and lawfully engaged in the pursuit of their business at Houston, Texas, and that plaintiff was thrown into prison and cause to remain among ruffians and criminals for about forty-eight hours, and until he could procure bail, during which time the fact that plaintiff had been arrested and charged with said crime became generally known in the city of Knoxville, and publication made in the Knoxville papers. The declaration alleges the humiliation and mental worry occasioned to plaintiff by reason of said malicious prosecution, and also damages sustained to his business and reputation, and sued for the sum of $25,000.

To the declaration the defendant filed three pleas: First, the general issue of not guilty. Second, "that the plaintiff after his arrest as averred in said declaration and prior to the institution of this suit, solely through the acts and efforts of himself, and of his agents, and attorneys, procured a discontinuance of said prosecution, without the knowledge or consent of the defendant, and without any judicial trial, hearing or investigation into the justness or merit of the charges preferred against the plaintiff in the criminal warrant and prosecution referred to in plaintiff's declaration; therefore, the plaintiff is precluded from maintaining a suit." By the third plea the defendant pleaded the statute of limitations of more than one year, and the bar of the suit by reason of the statute of limitations as provided in chapter 27 of the Acts of 1715, Shannon's Code, sec. 4469.

To the plea of the statute of limitations, plaintiff filed a replication, setting forth that at a former trial of the case a voluntary nonsuit was taken on the ―― day of March, 1931, and that the present suit was instituted within twelve months after said voluntary nonsuit. To the second plea plaintiff filed a replication and in which

he states that it is not true that he or his agents or attorneys procured a discontinuance of said prosecution, and joins issue on said plea.

At the conclusion of all the evidence, the defendant moved the court to peremptorily instruct the jury to return a verdict in favor of the defendant and against the plaintiff, which motion was by the court overruled and disallowed. The case was submitted to the jury, and the jury returned a verdict in favor of plaintiff and against the defendant for the sum of $2,000, and the cost of the cause. A motion for a new trial by the defendant was overruled by the court and judgment rendered on the jury verdict. To the action of the court in overruling his motion for a new trial and in rendering judgment on the jury verdict in favor of plaintiff, the defendant prayed and was granted an appeal to the eastern section of this court, which appeal has been duly perfected and errors assigned.

By the first assignment of error it is said by appellant that the court erred in overruling the motion for a new trial and in rendering a judgment against the defendant, because there is no evidence to sustain the verdict of the jury. By the second assignment it is said that the court erred in overruling defendant's motion for a directed verdict made at the conclusion of all the proof, because there is no evidence upon which a verdict and judgment in favor of plaintiff and against the defendant can be based. By the third assignment it is said that the court erred in refusing to set aside the verdict, because the verdict is so excessive as to evince passion, prejudice, or unaccountable caprice on the part of the jury. By the fourth assignment the action of the court in refusing to submit to the jury certain special issues of fact tendered by the defendant is challenged as error. By the fifth assignment it is charged that the court erred in instructing the jury as follows: ''The burden of proving such procurement rests upon the defendant, but a bare preponderance of the evidence is sufficient.'' The sixth and seventh assignments are directed to certain portions of the charge of the court to the jury set out under the respective assignments. The eighth, ninth, tenth, and eleventh assignments are each directed to the action of the court in refusing to give in charge to the jury certain special requests tendered by the defendant.

In the brief filed in support of the assignments of error, four propositions are relied upon and discussed by appellant, and which are in substance as follows: First, that the alleged criminal prosecution was dismissed by the District Attorney-General of Knoxville, and plaintiff and his associate, Miller, were released from jail in Houston by the procurement of plaintiff and his attorney, without a judicial investigation, and hence a malicious prosecution suit cannot therefore be maintained against the defendant; second, that the trial judge incorrectly and improperly charged the jury on the question as to de-

fendant acting upon the advice of counsel in having the warrant for the arrest of plaintiff issued; third, that probable cause existed warranting and justifying the defendant in procuring the arrest of plaintiff; fourth, that the trial judge improperly and inaccurately charged the jury on the subject of malice and implied malice in procuring the prosecution of plaintiff.

We will consider these propositions relied upon by appellant in the order in which they are presented and discussed in the brief by appellant. Under the first proposition, it is the contention of appellant that a defendant in a criminal prosecution, who procures a dismissal or termination of the criminal prosecution without a trial on the merits, is not entitled thereafter to maintain a suit for damages for malicious prosecution growing out of the transaction; that one of the essential elements in a plaintiff's case, in a suit for damages for malicious prosecution, is a final termination of the criminal prosecution in favor of the plaintiff, the defendant in a criminal prosecution, and that this final termination, in order to fill this essential requirement, must be a termination not brought about by the defendant himself.

It appears from the record in this case that in 1927 plaintiff, Wahl, who up to that time had been a salesman employed by the National Cash Register Company, became associated with his brother-in-law in the purchase of the rights in a group of four states to exploit and sell an electrical sign, a patented device; that Wahl then owned a large automobile, but desired to purchase a small automobile to be used by him and his brother-in-law, Miller, in traveling through the states to which they had acquired the patent rights on the electrical device in appointing agents and making sales of this device. It also appears that the defendant Martin was the owner of a practically new Dodge coupe, and that he had placed the same with one Wallace Cable, who was then engaged in the garage business in Knoxville, or Fountain City, a suburb of Knoxville, to sell the Dodge car for him. When plaintiff, Wahl, and Miller, his associate, called at the garage of Wallace Cable looking for an automobile that would suit their need, Cable told them of the Martin car, and arranged to show it to them on the following morning. Cable, it seems, did not have the key to the car, but went to the home of Martin on the following morning and procured the key so that he could show or demonstrate the car to Wahl and Miller. According to the evidence of Wahl and also Cable, Wahl informed Cable of the purpose for which they were buying the car, and showed to Cable the contract for the patent rights to sell same in the group of states that he and Miller had purchased, and that the automobile would be used by him in traveling over these states. He then agreed upon the purchase price of the Dodge car, which was $750; $150 of which was paid in cash, and an installment conditional sales contract was exe-

cuted by Wahl and Miller, payable in monthly installments for the balance of the purchase price, and the automobile was delivered by Cable to Wahl and Miller. After remaining in Knoxville a few days, they drove the automobile out of the State of Tennessee, and into the State of Missouri, and finally to the State of Texas. When certain of the installments became due and unpaid, the defendant, Martin, addressed a notice to Wahl and Miller at the address stated on the conditional sales contract. Not hearing from Wahl or Miller in response to the notice, it appears that Martin got in communication by telephone with Cable to learn the proper address and whereabouts of Wahl and Miller. According to the evidence of Martin, Cable informed Martin that Wahl and Miller were in Greenville, South Carolina, but would return to Knoxville in a few days for the Christmas holidays. A few days thereafter, Martin again directed an inquiry to Cable to ascertain if Wahl and Miller had returned to Knoxville, and was referred by Cable to Mrs. Miller, the mother-in-law of Wahl and the mother of Miller, who lived at Fountain City, a suburb of Knoxville. In the meantime, Martin had sued out a writ of replevin for the automobile, and the replevin writ was placed in the hands of an officer. This was done after Martin had turned the conditional sales contract or note over to his attorneys, Kennerly & Key. The officer reported to Mr. Key of the law firm of Kennerly & Key that the automobile was not to be found in Knox county, but that he had learned that Wahl and Miller had driven the automobile to Texas. Whereupon the defendant and his attorney, Mr. Key, got into communication with Mrs. Miller in an effort to locate the whereabouts of the automobile and Wahl and Miller, the purchasers. It appears that Mrs. Miller proposed to secure one installment of $53 of the note, but this was not satisfactory to Mr. Key, and he so informed her. Martin and Mr. Key went to see Mrs. Miller with reference to the securing of the note by Mrs. Miller, and there is a decided conflict in the evidence of Mrs. Miller on the one side and defendant Martin and Mr. Key on the other. However, on the same afternoon, and after the visit by defendant, Martin, and Mr. Key to Mrs. Miller, defendant, Martin, acting upon the advice of his attorneys, Kennerly & Key, had a warrant issued by a justice of the peace of Knox county, Tennessee, and by telegraph procured the arrest in Houston, Texas, of the defendants in the warrant, Wahl and Miller. Wahl was arrested while in the rotunda or lobby of the hotel at which he was then stopping in Houston, on Saturday afternoon, and taken to jail. However, it would appear that before he was arrested he had received information from Mrs. Miller that Martin and his attorney would procure his arrest. He then sent a telegram to Martin inquiring if Martin had received a check which he claimed to have mailed as a payment on the automobile, and also requested that he see Wallace Cable with reference

to his right to drive the automobile out of the State. After he was arrested on Saturday afternoon, he was placed in jail, but got in communication with the attorney at Knoxville by telegraph. He was released from jail, after being confined about forty-eight hours, on bail, and his associate, Mr. Miller, who was later arrested and put in jail with him, was not released, as he could not make bail at that time. It appears that Martin, through his attorney, had the sheriff of Knox county start to Houston, Texas, with requisition to bring the defendants back to Knoxville. It also appears that, after the defendant, Wahl, the defendant in that case, got in communication with his attorney by telegraph, at Knoxville, his attorney called on General Bibb, the Attorney-General at Knoxville, for the purpose of procuring the release of Wahl and Miller from custody, and made a statement to the Attorney-General to the effect that, at the time the automobile had been purchased through Wallace Cable, the agent of Mr. Martin, permission was expressly given to take the automobile out of the State and to be used by Wahl and Miller in their business. It also appears that the Attorney-General, Bibb, was unwilling to interfere unless and until an affidavit or statement could be procured from Wallace Cable, and whereupon Wahl's attorney procured an affidavit from Wallace Cable, and in which he stated that, at the time he sold the automobile to Wahl and Miller, permission was given that the automobile could be taken out of the State to be used by Wahl and Miller in their business. When this affidavit was presented to the Attorney-General by Wahl's attorney, the Attorney-General proceeded to send four telegrams, one to the Governor of Tennessee directing that requisition be not issued for the return of the defendants Wahl and Miller; another to the sheriff or jailer directing the release from jail of the two prisoners; and another to the Governor of Texas. It also appears that, when the sheriff reached New Orleans en route to Houston, he learned of the action of the Attorney-General, and communicated by telegraph with Mr. Key, the attorney for Martin, to know if the charges had been withdrawn against the defendants. This was two or three days after the Attorney-General had ordered the release of the prisoners. Upon the receipt of the telegram from the sheriff, who was then at New Orleans, Mr. Key got into communication with the Attorney-General, and then learned for the first time that the Attorney-General, had ordered the release of the prisoners. It appears that Mr. Key then vigorously protested to the Attorney-General, and insisted that the prisoners should be held in jail at Houston, or in custody, until the sheriff could bring them back to Knoxville for trial. It also appears that, after some discussion between the Attorney-General and Mr. Key, the Attorney-General insisted that in the light of the affidavit from Wallace Cable, who was the agent of Mr. Martin, no crime had been committed, and that he would not rescind the order previously issued by him directing the

release of the prisoner, but suggested that they would go together and present the matter to the judge of the criminal court of Knoxville. This was done, and the judge of the criminal court agreed with the Attorney-General that a conviction could not be had on the facts as presented, and whereupon the Attorney-General refused to recall his instructions previously given by telegram to discharge the prisoners.

The above, we think, is a fair statement of the facts as appear from the evidence. Wahl, shortly thereafter, of his own accord, returned to Knoxville, and was at all times ready to be arrested on any criminal charge that Martin would bring against him. He was not thereafter arrested on the charge of feloniously removing the automobile from the State of Tennessee without the permission of the seller under the conditional sales contract. Under these facts, it is contended by the appellant that there had been no termination of the criminal prosecution, and no disposal of the matter on its merits, and that Wahl and his attorney had procured the dismissal of the charges on the ex parte request and procurement by Wahl and his attorney, and hence a suit for malicious prosecution could not be maintained. Numerous authorities are cited and relied upon by appellant in support of this contention. Among other authorities cited and relied upon by appellant in the brief is the rule announced in 18 R. C. L., p. 25, sec. 13, wherein it is said:

"It is generally held that where the original proceeding has been terminated without regard to its merits or propriety by agreement or settlement of the parties, or solely by the procurement of the accused as a matter of favor, or as the result of some act, trick, or device, preventing action and consideration by the court, there is no such termination as may be availed of for the purpose of an action for malicious prosecution."

Numerous cases are cited in support of the above rule. In Holliday v. Holliday, 123 Cal., 26, 55 Pac., 703, 705, a case relied upon by appellant, in the course of the opinion it is said:

"It is, of course, true that the dismissal of a charge at the procurement of the accused cannot be construed as such a final determination of the matter in her favor as to support an action for malicious prosecution."

A reading of that case discloses that there was no investigation made to ascertain the merits of the charge.

Appellant especially relies upon the case of Langford v. Railway Co., 144 Mass., 431, 11 N. E., 697. In that case Langford was arrested and charged with violating a Massachusetts statute, making it unlawful to ride on a train without paying the railroad fare. He was fined by a justice of the peace. On appeal to the superior court, the prosecuting attorney, at the request of Langford, wrote upon the complaint: "I will no further prosecute this complaint," and

signed this notation, and the criminal prosecution was dismissed. In the malicious prosecution suit on the above facts, it was held that such a termination of the criminal prosecution would not sustain an action for malicious prosecution, and wherein the court said:

"The first count of the plaintiff's declaration is, in substance, a count for malicious prosecution, and it cannot be maintained, because the evidence fails to show such a termination of the prosecution alleged to be malicious as will entitle the plaintiff to maintain this action. The entry of nolle prosequi by the district attorney of his own motion, followed by a discharge of the accused party by the court, may be such a termination of the prosecution as will enable the party to maintain an action for malicious prosecution. . . . But our cases uniformly hold that where a nolle prosequi is entered by the procurement of the party prosecuted, or by his consent, or by way of compromise, such party cannot have an action for malicious prosecution."

Another case relied upon by appellant is Singer Sewing Machine Co. v. Dyer, 156 Ky., 156, 160 S. W., 917, 919. In that case, Mrs. Dyer had purchased a sewing machine on a conditional sales contract, and defaulted in the payment of the monthly installments, and the sewing machine company instituted a suit to recover possession of the machine. When the officer attempted to levy process, he was unable to find the machine, and Mrs. Dyer refused to disclose where it was. The sewing machine company then instituted a criminal proceeding, and caused her arrest. After her arrest, Mrs. Dyer and her attorney had a conference with the prosecuting attorney, and as a result procured a dismissal of the criminal charge upon her agreeing to and giving a forthcoming bond, conditioned upon her producing the machine in question. After the criminal suit was thus disposed of, she sued the sewing machine company in an action for damages for malicious prosecution. It was held by the Kentucky court that, under the facts as above stated, she could not maintain her suit for malicious prosecution, the court saying:

"The defendant showed on the trial that what happened was this: After Mrs. Dyer came in and entered her appearance in the police court, it was agreed between her attorney and the county attorney that she should execute a forthcoming bond for the forthcoming of the machine in the quarterly court, and that, when this was done, the county attorney would dismiss the prosecution against her. She executed the forthcoming bond, and thereupon the prosecution was dismissed by the county attorney. These facts were proved by the defendant on the trial, but were ignored by the court, possibly because the defense was not pleaded. . . . But the facts, if established, constitute a defense to the action."

Another case cited and relied upon by appellant is Craig v. Ginn, 3 Pennewill (19 Del.), 117, 48 Atl., 192, 53 L. R. A., 715, 94 Am.

St. Rep., 77. That was a cause in which a criminal prosecution was dismissed upon a compromise being effected between the defendant and the prosecutor. Appellant also cites and relies upon the case of Leyenberger v. Paul, 40 Ill. App., 516. In that case it appeared that the criminal proceeding against the defendant had been adjourned to a certain day. After the hearing had been adjourned and before the date of the trial, the attorney for the defendant appeared before the magistrate and procured a dismissal for a failure to prosecute. The court held that such a termination would not justify a suit for malicious prosecution. In disposing of the case the court said:

"But a nolle prosequi by consent, or by way of compromise, or where such exemption from further prosecution has been demanded as a right, or sought for as a favor, is not enough. . . . The principle of the cases is that the discharge or acquittal must be by judicial action, under such circumstances as that the party accused has not avoided or prevented judicial investigation.

In the case of Halberstadt v. New York Life Ins. Co., 194 N. Y., 1, 86 N. E., 801, 21 L. R. A. (N. S.), 293, 16 Ann. Cas., 1102, the plaintiff was prosecuted in the courts of Mexico for embezzlement. Before he could be arrested, however, he fled, and became a fugitive from justice until the prosecution was barred by the statute of limitation. After the bar of the statute of limitations, he obtained the entry of a nolle prosequi on that ground alone, and thereafter sued for malicious prosecution. It was held that he could not maintain a suit for malicious prosecution under the above facts.

Numerous other cases are cited and relied upon by appellant, and we have examined these cases, but the above are the strongest in favor of the contention of appellant.

Only one case is cited and relied upon in support of this contention by appellant from the Supreme Court of Tennessee, and that is the case of Scheibler v. Steinburg, 129 Tenn., 614, 167 S. W., 866, Ann. Cas., 1914D, 1162. We do not think that the Scheibler Case goes as far as the Massachusetts court. In that case the Supreme Court held that the entry of a nolle prosequi would terminate the particular prosecution at whatever stage of the suit it might be entered, and is such a termination of the criminal prosecution in defendant's favor as is contemplated by the rule requiring that the original suit be terminated in favor of the plaintiff before he can commence his action for malicious prosecution.

In the present case, the Attorney-General made an investigation as to the facts. He was not content to rely upon the representations made to him by Wahl's attorney. Before he took any action, he required the affidavit from Wallace Cable, who was the agent of Martin in selling this automobile. When this affidavit was procured, the Attorney-General was of the opinion that, under the facts as disclosed by the affidavit, no criminal offense had been committed. He

also knew that, in the event of a prosecution of Wahl and Miller, the State would have to rely upon the evidence of Wallace Cable, and, under his evidence, certainly no conviction could have been had. It cannot, therefore, be said that the Attorney-General did not make a fair investigation as to the merits of the matter. It also appears that the Attorney-General went fully into the matter with the attorney for Martin, and that, after a full consideration of the contention made by Mr. Key, the attorney for Martin, the Attorney-General still insisted that no crime had been committed. In an effort to satisfy Mr. Key, he suggested that Mr. Key go with him to the criminal judge and submit the question to the criminal judge. The criminal judge agreed with the Attorney-General that the prisoners should be released from custody.

It also appears that Miller sued Martin for malicious prosecution and false arrest growing out of this same transaction. In the Miller Case the trial judge excluded the evidence of Mr. Bibb, the Attorney-General. The Eastern Section of this court, in reversing the trial judge, and in sustaining the assignment of error on the exclusion of General Bibb's evidence, stated (Miller v. Martin, 10 Tenn. App., 149).

"We are of the opinion that this evidence is material and relevant as showing a natural consequence of a malicious prosecution, if the prosecution be found to be malicious, and establishes an element of damage or injured reputation."

The effect of the holding of the Eastern Section of this court was that there had been a termination of the criminal prosecution in favor of the defendant, Miller, or that the evidence, if it had been admitted, would have shown a termination of the criminal prosecution after investigation by the Attorney-General.

It results that the assignments of error based upon this question cannot be sustained.

Nor do we think that the second proposition contended for by appellant can be sustained. This goes to language used by the trial judge in his charge to the jury, and wherein the court stated in substance that, if the defendant Martin made a full and complete disclosure of all the facts to his attorney, and that he honestly sought the advice of his attorneys and stated all the facts to them known to him, or which he could have ascertained by due and diligent inquiry relating to the transaction in question between Wallace Cable and W. B. Wahl, and any agreements made in reference thereto, and that these attorneys then honestly advised him to take out the warrant, and he honestly acted upon said advice, then there could be no recovery. The portion of this charge especially complained of by appellant is where the court stated that, after receiving this information from Martin, the attorneys honestly advised him to take out the warrant.

We do not think that this language by the court was in any sense prejudicial to defendant, Martin, when taken in connection with other portions of the charge. On this subject the court charged the jury:

"It is the general rule that honest advice of reputable counsel affords a complete defense to an action for malicious prosecution where it appears that the prosecution was instituted in reliance and good faith on such advice, given after a full and fair statement to the attorney of all the material facts within his knowledge, or which he could have ascertained by due and reasonable diligence. The fact that the said attorney's advice was unsound or erroneous will not affect the result, if honestly given upon such a disclosure of material facts. The attorney's error will not deprive his client of such defense. But such defense will not avail if there was an omission by design or mistake, to state or disclose the material facts, or any material facts, known to the defendant, or which should have been known to him by the exercise of due and reasonable diligence. . . ."

In this connection we will add that one of the theories of the plaintiff, and so averred in the declaration, was that the prosecution by Martin was not in good faith, but he was seeking to force the collection of his debt. The evidence of Mrs. Miller on this subject was to the effect that both Mr. Martin and Mr. Key sought to have her execute a note binding herself to the payment of this debt for her son and son-in-law on the threat that a failure to do so would result in a criminal prosecution. Both Mr. Martin and Mr. Key denied this statement made by Mrs. Miller. However, her evidence on the subject, together with the evidence of Mr. Martin and Mr. Key, was submitted to the jury, along with the other evidence introduced. We cannot say that under the facts of the record this was not a proper charge on the subject of advice of counsel.

It results that this contetion by appellant cannot be sustained.

The next question is with reference to the existence of probable cause for procuring the arrest of Wahl. Wallace Cable testified that he informed Mr. Martin at the time he delivered the title note to him that the car would be used by the purchasers in connection with their business, and which would take them out of the State, and explained that the words in the contract, "Will not take out of Knox county," which had been stricken out of the contract, was the result of the agreement that the car could be used by the purchasers in the prosecution of their business in other states. It is true that Mr. Martin denied that Cable made any such representation or statement to him. He admits, however, that he did observe that these words had been stricken out of the contract, but explained that he had no objection to them using the car in other counties in the State. However, there was a conflict in the evidence on this subject, and this made it necessary to submit the question to the jury. It is further contended by appellant that, even though Cable agreed

with the purchasers of the automobile that they could take it outside of the State, this was not made known to Martin, and he did not know of such agreement at the time he procured the arrest of Wahl on the warrant, that he would still have had probable cause for the issuance of the warrant and the resultant arrest and imprisonment. Conceding this to be true, the fact remains that Cable testified that he did communicate this fact to Martin at the time he delivered the title note. There being some evidence that Martin had this information, under the well-settled rule the verdict of the jury cannot be disturbed on appeal.

On the question as to whether or not there had been a full disclosure made by Martin to his attorneys, there was a conflict in the evidence. Martin does not claim that he informed his attorneys that there had been an agreement made by his agent, Cable, with the purchasers at the time the automobile was purchased that it could be taken outside of the State and into other states in connection with the business of the purchaser. On the contrary, he denies that there was any such agreement made, and especially denies that, if there was such an agreement, he had knowledge of it. It was therefore a question for the jury to say whether or not, under the evidence, Martin did have knowledge of the agreement made by his agent, Cable, and failed to disclose it to his attorney. There being a conflict in the evidence on this question, the verdict of the jury is conclusive on this court.

Another contention made by appellant under certain of the assignments of error is that the court did not properly instruct the jury on the question of malice and implied malice as applied to suits for malicious prosecution. We have carefully examined the charge of the court and are of the opinion that the charge, when taken in its entirety, fully covers the theory of the defendant as well as the plaintiff. It contains a clear and comprehensive statement of the law on the questions presented by the issues and by the evidence.

We are also of the opinion that the verdict is not excessive, if the plaintiff is entitled to recover at all in this case. It appears that plaintiff sustained an excellent reputation in the city of Knoxville. He had held a lucrative and responsible position as a salesman for the National Cash Register Company. At the time he was arrested, he was in Houston, Texas, promoting the business in which he was then engaged. He was stopping at a good hotel, and with every appearance of respectability. His arrest was publicly made. He was taken to jail and put in a cell with a number of other' criminals. He describes in detail how he was treated by these other prisoners. He suffered great humiliation and mortification. He was a married man with a family, living at Fountain City. The consequent humiliation to his wife and family added greatly to his mental distress because of this arrest and imprisonment. Publicity was

given to his arrest and imprisonment by a leading newspaper in Knoxville where he had lived the greater portion of his life and where he was well acquainted. It is shown that, after his arrest in Houston, Texas, his new venture was to all intents and purposes ruined. We think the recovery was not excessive under the facts.

It results that we find no error, and the judgment of the lower court is accordingly affirmed. Appellant and surety on the appeal bond will pay the cost of this appeal.

Heiskell and Anderson, JJ., concur.