Sally LANDERS, Appellee,

v.

The KROGER COMPANY, Appellant.

Court of Appeals of Tennessee,
Eastern Section.

March 12, 1976.

Certiorari Denied by Supreme Court
July 26, 1976.

James A. Ridley, III, of Kramer, Johnson, Rayson, Greenwood & McVeigh, Knoxville, for appellant.

John T. Baugh, of Kennerly, Montgomery, Howard & Finley, Knoxville, for appellee.

## OPINION

PARROTT, Presiding Judge.

This malicious prosecution suit grows out of The Kroger Company's criminally prosecuting plaintiff, Sally Landers, for fraudulently obtaining money by means of a check which was returned unpaid because of "insufficient funds."

Kroger has appealed from the action of the circuit judge in overruling its motion for new trial and entering, in accord with a jury verdict, judgment for plaintiff in the amount of $5,000.00 compensatory damages and $2,500.00 punitive damages.

Sally Landers, a 17-year old University of Tennessee student from Chattanooga, living in a dormitory at Knoxville, cashed a $20.00 check at a Knoxville Kroger store on August 13, 1974. On the face of the check was printed Miss Lander's Chattanooga address and on the back of the check was written in longhand by Miss Landers her social security number and Knoxville address at a University of Tennessee dormitory.

It is admitted this check was returned to Kroger marked "insufficient funds." Miss Landers testified that the night before she wrote the check she called her mother asking that some money be put in the bank. The undisputed proof shows that on September 10, 1974, Kroger caused to be mailed to Miss Landers at her U. T. address a letter with adequate postage advising her that the check was returned for "insufficient funds." On September 17, more than five days after mailing the notice, Kroger procured a warrant charging Miss Landers with fraudulently obtaining money by means of a worthless check. Kroger did not send a letter to her Chattanooga address, nor did it attempt to call the Chattanooga phone number. The Kroger employees say they are sure they tried to telephone Miss Landers at Knoxville but have no specific recollection of the phone call. Miss Landers testified she never received the written notice or a telephone call.

In the latter part of September when Miss Landers returned to U. T., she moved to another dormitory where, on September 28, 45 days after writing the check, she was arrested on the warrant procured on September 19.

After Miss Landers' arrest at the dormitory, she was taken to the Knox County jail where it was discovered she was only 17 years of age. After discovering she was a minor, Miss Landers was taken to the Knox County Juvenile Court. At the juvenile court, counselor Mary Martha White, after interviewing Miss Landers, conferred with the juvenile judge and it was apparently agreed to handle the matter on an informal basis. Counselor White placed a call to the Kroger store asking that, if Miss Landers would pick up and pay the check, would Kroger dismiss the prosecution. Kroger agreed to Counselor White's suggestion which was agreeable to Miss Landers.

Miss Landers testified that when she went to the Kroger store to pay the check she saw a letter with her name and Knoxville address on it which she thinks had stamped on it in red "Return to Sender." Michael Jackson, co-manager of the Kroger store where Miss Landers picked up the check, testified the letter to Miss Landers was not returned and he never had it in his possession.

█ For a plaintiff to be successful in a malicious prosecution case growing out of

an arrest for an alleged criminal act, it must be alleged and provide that: a criminal proceeding has been instituted by the defendant against the plaintiff; such proceeding terminated in favor of accused; there was an absence of probable cause for the proceeding; and, there was malice or a primary purpose other than that of bringing defender to justice. *F. W. Woolworth Co. v. Connors,* 142 Tenn. 678, 222 S.W. 1053 (1920); *Pharis v. Lambert,* 33 Tenn. 228 (1853); Restatement of Torts, Wrongful Prosecution, Sec. 653; Prosser Law of Torts, 4th ed., Sec. 119.

"Definitions of probable cause, however differently expressed, all agree in these two essentials: (1) The prosecutor must in good faith have honestly believed the accused was guilty of the crime charged; and (2) his belief must have been reasonable—based on facts and circumstances sufficient to lead an ordinarily prudent person to believe the accused was guilty of the crime charged. The prosecutor must have made the investigation an ordinarily prudent person would have made in the circumstances." *Thompson v. Schulz,* 34 Tenn.App. 488, 240 S.W.2d 252 (1940).

In a malicious prosecution action the existence or lack of existence of probable cause is a question of law for the court. When probable cause is to be determined from undisputed or admitted facts, the determination is a matter of law exclusively for the court. *Cohen v. Cook,* 224 Tenn. 729, 462 S.W.2d 499 (1970); *Peoples Protective Life Ins. Co. v. Neuhoff,* 56 Tenn.App. 346, 407 S.W.2d 190 (1966).

Under the facts of this case and the applicable law we believe the defendant had probable cause to arrest Miss Landers. Prior to procuring the arrest warrant, Kroger had fully complied with all the statutory requirements by giving Miss Landers written notice and waiting more than five days.

T.C.A. § 39–1960 provides that a drawer of a check which is returned for insufficient funds is guilty of prima facie fraudulent intent if the check is not paid within five days after receiving notice that the check has not been paid by the drawee (bank). T.C.A. § 39–1961 defines notice as "not only notice given to the person entitled thereto in person, but also notice given to such person in writing." The statute goes on to provide that it will be presumed that proper notice has been given when the holder of the check deposits in the mail the written notice to the last known address of the maker with adequate and sufficient postage. It is true this statutory presumption is one of the barest and disappears with the introduction of evidence to rebut. *State v. Rice,* 490 S.W.2d 516 (Tenn.1973). However, in this case, we find no evidence from which it can be inferred that at the time Kroger procured the arrest warrant the notice had been returned to Kroger or that Kroger had any knowledge or should have known Miss Landers had not received their written notice which was deposited in the mail with adequate postage.

Even when accepted as true Miss Landers' testimony, as we are required to in considering a motion for directed verdict, that on the day she paid the check Kroger had in its possession the written notice mailed to Miss Landers, such only proves that at some point in time Kroger knew Miss Landers had not received the notice of nonpayment. In no way from this evidence can it be inferred that Kroger at the time it procured the warrant had notice or knowledge that its letter had not been received by Miss Landers. Since there is no other evidence showing that at the time the arrest warrant was procured Kroger knew or should have known Miss Landers had not received the written notice, Kroger had a right to rely upon the statutory presumption that its written notice had been received by Miss Landers. Thus we think, under the proof along with the presumption, Kroger had probable cause to procure the arrest of Miss Landers. Conversely, plaintiff has failed to carry the burden of proof in showing a lack of probable cause. With the undisputed evidence showing an existence of probable cause, such becomes a matter of law for the court to determine and not the jury.

We believe there is an additional reason Miss Landers is not entitled to a recovery in this action. She has also failed to carry the burden of proving that the criminal proceeding terminated in favor of the "accused," which is an essential element necessary to recover in a malicious prosecution action. From the testimony of Judge Douglass, the notation placed on the warrant, and Counselor White's testimony, the undisputed proof shows the criminal proceeding instituted by Kroger was compromised and settled. Also, we think it significant that the initiation of the compromise did not come from Kroger but came from the juvenile court authorities. There is absolutely no evidence from which it can be inferred Miss Landers was put under duress or coerced by Kroger to enter into a settlement of the criminal proceeding. Kroger merely acceded to the suggestion of the juvenile authorities which was acceptable to Miss Landers. Under such circumstances it must be said a compromise or settlement, voluntarily and understandingly, was consummated by or on behalf of the accused. Therefore, as a matter of law, there was not a favorable termination so as to support an action of malicious prosecution.

*Martin v. Wahl,* 17 Tenn.App. 192, 66 S.W.2d 608 (1933), enunciates the general rule that a termination of a suit by way of compromise and settlement is not sufficient to support an action for malicious prosecution.

> "It is generally held that where the original proceeding has been terminated without regard to its merits or propriety by agreement or settlement of the parties, or solely by the procurement of the accused as a matter of favor, or as the result of some act, trick, or device, preventing action and consideration by the court, there is no such termination as may be availed of for the purpose of an action for malicious prosecution."

For authorities of like import see Restatement of Torts, Sec. 660; Prosser on Torts, 4th Ed. at p. 854 (1971); 52 Am.Jur.2d, Malicious Prosecution, Sec. 43; 54 C.J.S. Malicious Prosecution § 58; *Merritt-Chap-*

*man & Scott Corp. v. Elgin Coal, Inc.* (D.C. Tenn.) 358 F.Supp. 17 (applying Tennessee law), affirmed without opinion (C.A.6 Tenn.) 447 F.2d 598.

For the foregoing reasons a verdict is directed for defendant; the judgment entered for plaintiff is vacated with costs of all proceedings taxed to plaintiff.

SANDERS, J., and LUKE M. McAMIS, Special Judge, concur.