J. V. Trotter and R. W. Arnold *v.* The State.

(*Nashville.* December Term, 1928.)

Opinion filed January 21, 1929.

MURRAY & McCALLA and CARLYLE S. LITTLETON, for plaintiffs in error.

SHEPHERD, CARDEN & CURRY, and L. D. SMITH, Attorney-General, for the State.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The plaintiffs in error have been convicted of conspiring to take and appropriate to their own benefit, by the use of false pretenses, certain public funds of Hamilton County. They were each sentenced to a term of three years in the penitentiary and have appealed in error to this court.

Trotter was the Chairman of the Hamilton County Board of Education and Arnold was a contractor engaged to erect a county school and to do other work for

said county. The indictment charges that these two "did unlawfully and feloniously agree, confederate and conspire together to feloniously take and appropriate to their own use and benefit the public funds of Hamilton County." The indictment then sets out certain false pretenses and devices whereby it was alleged that Trotter and Arnold conspired to unlawfully procure and appropriate to themselves funds of Hamilton County, which details it is unnecessary to relate here.

*(1)* A preliminary motion is made, on behalf of the State, to strike from the record the bill of exceptions on the ground that said bill of exceptions was not filed within the time allowed by law. We find it unnecessary to pass on this motion, since we must dispose of the case on a question arising upon the technical record, and we do not have occasion to look to the motion for a new trial nor to the bill of exceptions at all.

The record shows a minute entry in the court below on June 30, 1928, as follows:

"After the jury had been sworn in this case and before the introduction of testimony began, the court announced that the indictment in this case was based upon and drawn under the Act of 1897, chapter 52, carried into Shannon's Code at section 6696a1, and that he wanted to hear from both sides as to whether that Act applied or not. Thereupon after some discussion by counsel for both sides the court held that said Act, to-wit, the Act of 1897, chapter 52, carried into Shannon's Code at section 6696a1, did apply and was controlling, and that the trial be proceeded with under that Act, to which holding and ruling of the court the defendants excepted at the time, insisting that said Act did not apply."

The Act referred to, which will be more fully set out hereafter, makes it a felony for two or more persons to enter into or form any conspiracy or combination of the kind therein described, and carries a penalty of from three to twenty-one years imprisonment in the penitentiary. The judgment of conviction in this case, as above stated, imposed a sentence of three years in the penitentiary. Obviously, therefore, the conviction was had under chapter 52 of the Acts of 1897 and not under section 6693, Shannon's Code, which deals with conspiracies generally. Under the latter section a conspiracy to obtain money by false pretenses is a misdemeanor only.

The ruling of the trial judge that chapter 52 of the Acts of 1897 controls the case was a ruling upon a question of law appearing from the record proper. No motion for a new trial was necessary to obtain a review of such ruling in this court, any more than such a motion would have been necessary to the review of the ruling on a motion to quash or a demurrer. Clearly it was not necessary to take a bill of exceptions to have such a ruling reviewed. See *Nashville C. & St. L. Ry.* v. *Smith,* 147 Tenn., 453; *Rogers* v. *Colville,* 145 Tenn., 657; *R. R. Co.* v. *Johnson,* 114 Tenn., 367; *Wise & Co.* v. *Morgan,* 101 Tenn., 267. In all these cases it was pointed out that errors apparent upon the record proper might be considered in this court without any motion for a new trial having been made, or bill of exceptions taken, in the court below.

*(2)* This brings us to a consideration of chapter 52 of the Acts of 1897 and the propriety of the ruling of the court below as to the applicability of such statute.

The Act, in part, is as follows:

"Sec. 1. Be it enacted by the General Assembly of the State of Tennessee, That it shall be a felony punishable by from three to twenty-one years imprisonment in the penitentiary and by full judgment of infamy and disqualification, for two or more persons to enter into or form any conspiracy or combination, or to remain in any conspiracy or combination under any name, or upon any pretext whatsoever, to take human life, or to engage in any act reasonably calculating to cause the loss of life, whether generally or of a class or classes, or of any individual or individuals; or to inflict corporal punishment or injury, whether generally or upon a class or classes, or upon an individual or individuals; or to burn or otherwise destroy property or to feloniously take the same, whether generally or of a class or classes or of an individual or individuals.

"Sec. 2. Be it further enacted, That it shall be a felony, punished in like manner as the offense described in the first Section of this Act, for any person, either directly or indirectly to procure or encourage anyone to become or remain a member of any such unlawful conspiracy or combination as is described in the first Section of this Act; or for any person either directly or indirectly to aid, abet, or encourage any person to engage or remain in such conspiracies or combinations or to aid or abet in the accomplishment of any purpose or end of such conspiracies or combinations."

The argument, of course, is that the defendants below did enter into or form a conspiracy or combination to *feloniously* take the property of Hamilton County.

(3) It seems to us from the terms employed that section 1 was a prohibition against organizing, joining, or remaining a member of any association or society, bear-

ing any name, or formed upon any pretext whatsoever, which contemplated taking human life, inflicting corporal punishment, or doing the other things enumerated. By "conspiracy or combination . . . under any name," the statute indicated an organization with a special designation, such as the White Caps or Night Riders, although membership in an organization formed "upon any pretext whatsoever" and having in view any of the unlawful purposes set out was equally denounced.

The legislature had in mind a conspiracy, combination, or organization with an existence more or less protracted. This is made plain by section 2, in which it is declared a felony for any person "to procure or encourage anyone to become or remain a member of such unlawful conspiracy or combination." Continuous existence of the conspiracy or combination, before and after the connection of any one conspirator, was thus recognized.

A separate provision was furthermore made in section 2 for the punishment of any person who aided or abetted in the accomplishment of any purpose or end of such conspiracies or combinations, that is, membership in such a conspiracy or combination was one crime, and aiding or abetting the combination or conspiracy in accomplishing any of its illegal purposes another distinct crime.

It is difficult to see the point of the provision as to aiding and abetting, if the statute was designed to cover ordinary conspiracies. A person who joins in the execution of the purposes of an ordinary conspiracy, even though he comes in after the conspiracy is formed, becomes a fellow conspirator—a principal, as much as if he had participated in the formation of such conspiracy. *Thomas* v. *United States*, 156 Fed., 897, 17 L. R. A. (N.

S.), 720; *People v. Mather*, 4 Wend. (N. Y.), 229, 21 Am. Dec., 122; 12 C. J., 579. If the crime which is the object of the conspiracy is accomplished, one, aiding and abetting, aids and abets the commission of such ultimate crime and is punishable accordingly.

The effort of the lawmakers, therefore, must have been directed against organizations, more or less abiding in character. Members of these organizations were denounced as conspirators. Those, not belonging to such organizations, were not amenable under the statute as principals, even though they should "aid or abet in the accomplishment of any purpose or end of such conspiracies or combinations," but such persons were denounced as aiders or abettors.

(4) If we look to the historical background of chapter 52 of the Acts of 1897, its meaning becomes entirely certain. We know that just previous to the enactment of this statute an organization known as the White Caps carried on in several sections of the State. This organization burned property, took human life, inflicted corporal punishment, and terrorized communities in which it operated. Its existence had grown to be a public scandal and this drastic statute was passed with the object of destroying this and all similar lawless conspiracies or combinations.

In construing a statute, the court may, with propriety, recur to the history of the times when it was passed. This is often necessary, in order to ascertain the reason as well as the meaning of particular provisions in it. The court should place itself in the situation of the legislature to ascertain the necessity and intent of the statute and then give such construction to the language used as to carry such intention into effect, as far as it can be

gathered from the terms of the statute. Things that are within the intention of the makers of a statute are as much within the statute as if they were within the letter thereof. And things, although within the letter of the statute, are not truly within the statute unless they be within the intention of the makers.

*(5)* The real intention of the Legislature will always prevail over the literal use of terms. *Gold* v. *Fite,* 61 Tenn. (2 Baxt.), 237; *Brown* v. *Hamlett,* 76 Tenn. (8 Lea), 732; *Standard Oil Co.* v. *State,* 117 Tenn., 618; *Bank & Trust Co.* v. *Walker,* 128 Tenn., 22; *Riggins* v. *Tyler,* 134 Tenn., 577.

*(6)* In view of the history of chapter 52 of the Acts of 1897, and recalling the mischief designed to be remedied, we must conclude that said statute was not intended to deal with the ordinary crime of conspiracy, as that offense was known under the common law and denounced by our earlier statute contained in section 6693, Shannon's Code. We are satisfied that an agreement or engagement of two or more persons to cooperate in a particular unlawful purpose, to commit a single crime, to obtain by false pretenses the money of a particular person, falls under section 6693, Shannon's Code. Such a confederacy does not bear a name, does not solicit members, has no continuity for other unlawful purposes, and does not, in general, present the distinguishing features of the conspiracies and combinations denounced by the Act of 1897.

While it must be conceded that some of the language used in chapter 52 of the Acts of 1897, taken literally, would apparently reach a case like the one before us, we are easy in the conclusion that the case before us does not fall within the true intent or spirit of the said Act.

As noted by this court in *Jenkins* v. *State,* 99 Tenn., 569, the decision being made the same year the Act was passed, chapter 52 of the Acts of 1897 was "commonly known as the law against White Caps." We would go far beyond the legislative purpose if we stretched this Act to cover the case of an ordinary conspiracy to commit a crime, such as the one before us.

Reversed and remanded for further proceedings.