Pam KERNEY, Plaintiff-Appellant,

v.

AETNA CASUALTY AND SURETY COMPANY and Bobby Lewis, Defendants-Appellees.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 17, 1982.

Application for Permission to Appeal Denied by Supreme Court March 28, 1983.

---

John E. Appman, Jamestown, for plaintiff-appellant.

Robert R. Ramsey, Burnett & Ramsey, Jamestown, for defendant-appellee Aetna Cas. & Sur. Co.

H. Marshall Judd, Cookeville, for defendant-appellee Bobby Lewis.

## OPINION

LEWIS, Judge.

Plaintiff brought this suit for malicious prosecution against defendants Bobby Lewis (Lewis) and Aetna Casualty and Surety Company (Aetna) following her acquittal by a Putnam County jury on criminal charges of conspiracy under T.C.A. § 39–1106[1] (now codified as T.C.A. § 39–1–606, hereinafter referred to by its former designation). At the close of plaintiff's proof the Trial Judge directed a verdict for defendants on the ground that plaintiff had failed to prove "lack of probable cause by affirmative evidence."

That part of the record which is properly before this Court fairly presents the following facts.

On February 16, 1976, at approximately 10:00 P.M., two police officers investigated an alleged breaking and entering at 64 East First Street in Cookeville, Tennessee. Edna and Floyd Mackie, their children, and plaintiff Pam Kerney, Mrs. Mackie's daughter from a prior marriage, lived there in quarters above Mrs. Mackie's business, the Brother and Sister Florist Shop.

The officers recorded the Mackies' report of missing property which included two television sets, furniture, clothing, and part of a collection of antique glass items. Among the missing furniture were three marble-top tables, a love seat, and three chairs.

The police report contained several observations which led the officers to suspect "that someone may be trying to burn the house." First, "there was no sign of forced entry." Second, when one of the police officers commented that it was strange that the thieves had not taken a third television set, Mrs. Mackie replied that it was inoperative. Furthermore, there was "a heavy odor of gas in the house where it had been turned on and left on without burning." Additionally, "Mrs. Mackie seemed very concerned about sleeping in the house" and "insisted they spend the night at a motel." Finally, the officers observed that later in the night someone moved a motorcycle and trailer away from the house to a remote corner of the property.

The next morning plaintiff drove Mrs. Mackie to one doctor in Sparta and, later that same morning, to another doctor in Nashville. Sometime that morning their home caught fire. At this time plaintiff was seventeen years of age. When arrested in August, she was eighteen.

In response to an insurance claim filed by the Mackies, on February 18 a representative of Aetna interviewed plaintiff about the fire and alleged burglary. That interview reflects no suspicion that plaintiff had committed a crime in regard to the matter in question.

By August of 1976, Aetna had not approved or denied the Mackies' claim, and Mrs. Mackie had long been applying pressure on Aetna's agents, Poteet and Associ-

---

1. *Conspiracy to take human life, inflict punishment or burn or destroy property* —... It shall be a felony punishable by from three (3) years to twenty-one (21) years' imprisonment in the penitentiary and by full judgment of infamy and disqualification, for two (2) or more persons to enter into or form any conspiracy or combination or to remain in any conspiracy or combination under any name, or upon any pretext whatsoever, to take human life, or to en-

gage in any act reasonably calculated to cause the loss of life, whether generally or of a class or classes, or of any individual or individuals; or to inflict corporal punishment or injury, whether generally or upon a class or classes, or upon an individual or individuals; or to burn or otherwise destroy property or to feloniously take the same, whether generally or of a class or classes, or of an individual or individuals.

ates Insurance Company (Poteet), in an effort to obtain payment. She ran a newspaper advertisement denouncing an anonymous insurance agency. She contacted a Nashville television station's troubleshooter reporter. She parked in her front yard a mobile neon sign that referred directly to Poteet and the lack of payment on her insurance claim. She asked her friends and customers to boycott the Poteet Agency. Finally, on August 16 she wrote an angry four-page letter to the Poteet agency declaring her intention to pickett their office unless the claim was paid by the first of September.

In August of 1976, Lewis, a private investigator from Goodlettsville, Tennessee, billed Aetna for a long distance telephone call that had been placed from Goodlettsville to Cookeville on August 17, the day after Mrs. Mackie wrote the letter to the Poteet agency. Lewis' billing records show that he charged Aetna for fourteen and a half hours of work for the days August 19 and 20. For August 25–26, he charged Aetna for twenty six and a half hours of work and for a meal bought "for Det. Larry Evitts" on the 26th.

During the course of his four-day investigation, Mr. Lewis was listed as the "arresting officer" of Larry Apple (Apple). The "Arrest Report" reflects that Mr. Apple stated that on February 16 Mrs. Mackie had tried to recruit his aid in burning her shop. Also, "[a] few days later ... Mrs. Mackie and her daughter told him [Apple] that they had burned the house."

On August 26 Jerry Lancaster (Lancaster) gave a statement to the police in which he wrote that "Pam brought love seat, three chairs ... and three marble top tables" to his home sometime in January. The time of this statement was twelve noon.

An "Arrest Report" shows that plaintiff was arrested at 10:00 A.M. on August 26th for "suspicion of arson." At the police station, plaintiff repeatedly professed her innocence and demanded her right to counsel. Although no warrant existed, plaintiff was locked in a cell while her captors went to lunch. Later that afternoon her attorney, Bill Cameron (Cameron), gained her release.

Before going to lunch her jailers threatened plaintiff with additional felony charges in an effort to make her speak before her attorney arrived. At one point in this process, Lewis said, "I think we might as well pop a warrant on her and prosecute her. She's a tough little gal." At another point, he inquired: "Whose idea was it to put that sign up there in front of your place of business?"

Further, bills from Lewis to Aetna show that nine more hours of investigation preceded the September term of the Putnam Grand Jury, which indicated plaintiff for "conspiracy to burn or destroy a certain house ... contrary to the statute T.C.A. § 39–1106 and against the peace and dignity of the state." Mrs. Mackie, Apple, and Lancaster were indicted as co-conspirators. A jury acquitted plaintiff of the charges on September 30, 1977.

Plaintiff, testifying in the instant suit, professed her innocence in regard to any crime. She further declared that during her ordeal on August 26, 1976, Lewis had called her a liar and a whore and stated his intention to put her "under the jail."

Mr. Cameron, the attorney who represented plaintiff at the criminal trial, testified that on August 26, 1976, Lewis had treated plaintiff's arrest as a "big joke." Cameron also testified that as a result of his own investigation, conducted the weekend following plaintiff's arrest, it was his belief that Lewis had employed "threats and abuse" to obtain statements against plaintiff.

■ The elements and respective burdens in a malicious prosecution case are well settled in Tennessee. A recent, succinct exposition of those elements is found in *Landers v. Kroger Co.,* 539 S.W.2d 130, 131–132 (Tenn.App.1976).

For a plaintiff to be successful in a malicious prosecution case growing out of an arrest for an alleged criminal act, it must be alleged and provide [*sic*] that: a criminal proceeding has been instituted

by the defendant against the plaintiff; such proceeding terminated in favor of accused; there was an absence of probable cause for the proceeding; and, there was malice or a primary purpose other than that of bringing defender to justice. [Citations omitted.]

Of the four elements enunciated, in the present case probable cause and malice are questioned.

[2] First,

Definitions of probable cause, however differently expressed, all agree in these two essentials: (1) The prosecutor must in good faith have honestly believed the accused was guilty of the crime charged; and (2) his belief must have been reasonable—based on facts and circumstances sufficient to lead an ordinarily prudent person to believe the accused was guilty of the crime charged. The prosecutor must have made the investigation an ordinarily prudent person would have made in the circumstances.

*Landers,* 539 S.W.2d at 132.

Probable cause is the lynchpin of malicious prosecution.

The statute under which plaintiff was charged, T.C.A. § 39–1106 imposes "a prohibition against organizing, joining or remaining a member of any association or society, bearing any name, or formed upon any pretext whatsoever, which contemplated taking human life, inflicting corporal punishment, or doing the other things enumerated," which enumeration happens to include arson. *Trotter v. State,* 158 Tenn. 264, 268–269, 12 S.W.2d 951, 952 (1929). Raising common-law misdemeanor conspiracy to a felony for this particular type of conspiracy, the statute has always been limited to members of organizations such as the "White Caps" and the "Night Riders," the apparent precursors of today's "Klu Klux Klan." *Trotter, supra; Asbury v. State,* 178 Tenn. 43, 154 S.W.2d 794 (1941).

We will, for the purpose of this opinion, assume that Lewis did not believe plaintiff was guilty under T.C.A. § 39–1106 and further assume that he played no role in the drafting of the indictment. For purposes of this appeal, we consider that the intended criminal charge against plaintiff was simple conspiracy under T.C.A. § 39–1101 (now codified as T.C.A. § 39–1–601). Probable cause will be adjudicated according to that statute, the question being: Did Lewis have an honest belief that plaintiff conspired to commit a crime?

The only hard evidence indicating that plaintiff may have conspired to commit a crime is the statement of Larry Apple that "Mrs. Mackie and her daughter told him that they had burned the house." By affirmative evidence, plaintiff has attacked this statement as coerced from Apple by defendant Lewis. We note that Mrs. Mackie had other daughters and one must assume that this reference is to plaintiff to get anything incriminating to her out of Apple's statement.

Additionally, there are several circumstances that have been urged as supporting probable cause against plaintiff. Jerry Lancaster asserted that the seventeen-year-old plaintiff, at the request of her mother Mrs. Mackie, brought some furniture to his home sometime in January of 1976. This furniture has a rough coincidence with furniture later claimed by Floyd and Edna Mackie as stolen. There are also the suspicious circumstances of the alleged burglary and the fire.

Nevertheless, we are of the opinion that it was a question for the jury to decide if an ordinarily prudent person could reasonably believe that plaintiff conspired to commit a crime. There is simply nothing in the record, other than Apple's possibly coerced statement, to indicate that an ordinarily prudent person could have had an honest and strong suspicion that plaintiff had committed any crime whatsoever.

Judge Todd, in *Cohen v. Cook,* 62 Tenn.App. 292, 462 S.W.2d 502 (1969), stated the correct rule concerning the plaintiff's burden of proof:

Defendants correctly insist, on the authority of the foregoing cases, that the burden of proof is upon the plaintiff to

show lack of probable cause by a preponderance of all the evidence. Where, however, arrest, trial, and exoneration are shown, and the plaintiff testifies of his own innocence of guilt or the appearance of guilt, the burden of proceeding shifts to the defendant, requiring him to produce for evaluation all of the facts and circumstances which he claims as justification for the prosecution.

*Id.,* at 315–316, 462 S.W.2d at 513. Facts and circumstances claimed as justification should be specific as only specifics would be relied upon by a reasonable person instigating a criminal action against another person.

Plaintiff, by affirmative evidence, has shown arrest, trial, and exoneration. She has testified to her innocence and has dispelled the appearance of guilt. The burden of proof has shifted to the defendant. Hence, a directed verdict for defendant was error. *Bankhead v. Hall,* 34 Tenn.App. 412, 238 S.W.2d 522 (1950).

■ A probable cause determination presents a mixed question of fact and law. If there is conflicting testimony, the jury determines what the instigator honestly believed with regard to the accused's guilt. It is for the trial judge to determine whether those beliefs conform to the reasonable-person standard. *Cohen v. Cook,* 224 Tenn. 729, 731–732, 462 S.W.2d 499, 500 (1970).

■ We decline the defendants' invitation to adopt the rule that "the indictment of the accused by a grand jury, if unexplained, is evidence that the person who initiated the proceedings had probable cause therefor." 52 Am.Jur.2d *Malicious Prosecution* § 177 (1970). This rule is one of many rules on the subject and we are not convinced that it is either the best rule or that it is in conformity with the law of malicious prosecution in Tennessee. Where a finding is procured by fraud, false testimony, or where the defendant did not believe in the guilt of the plaintiff, an indictment is not sufficient to bar a suit for malicious prosecution. *Johnston v. Zale Corporation,* 484 S.W.2d 531 (Tenn.1972). Neither is the advice of counsel a defense

where the defendant has failed to make a full and honest disclosure of all the facts. *Mitchell v. George,* 63 Tenn.App. 408, 474 S.W.2d 131 (1971).

■ At this point the element of maliciousness does not pose a problem for plaintiff. The absence of probable cause raises a rebuttable presumption of malice.

It is settled law that malice may be inferred from the fact that a criminal prosecution was brought without probable cause. [Citations omitted.] The inference is not one of law but is a presumption of fact which may be rebutted, thus making malice an issue to be decided by the jury where a criminal prosecution is instituted without probable cause.

*Lewis v. Williams,* 618 S.W.2d 299, 303 (Tenn.1981).

■ Malice may also be inferred from motives of the instigator. *Dunn v. Alabama Oil and Gas Co.,* 42 Tenn.App. 108, 299 S.W.2d 25 (1956).

That Lewis is the instigator is supported by the record. No suspicions were raised against plaintiff until Lewis began his investigation. Also, there are Lewis' statements to plaintiff about his intentions to "pop a warrant ·on her and prosecute her" and his desire to put her "under the jail."

We are of the opinion that the Trial Judge erred in granting a directed verdict on the issue of probable cause.

However, Aetna insists that even if the Trial Judge did err in granting a directed verdict on the issue of probable cause, plaintiff failed to show that Lewis was acting as Aetna's agent. Aetna therefore insists that the motion for a directed verdict was properly granted as to it.

■ "Agency in its broadest sense includes every relation in which one person acts for or represents another." *Howard v. Haven,* 198 Tenn. 572, 583, 281 S.W.2d 480, 485 (1955). "Whether an agency has been created is to be determined by the relations of the parties as they in fact exist under their agreements or acts. If relations exist which will constitute an agency, it will be

an agency, whether the parties understood it to be or not." *Smith v. Tennessee Coach Co.*, 183 Tenn. 676, 680–681, 194 S.W.2d 867, 869 (1946).

In the instant case plaintiff called as a witness defendant Lewis in an effort to prove that he was the agent of Aetna. Mr. Lewis testified that he was paid by the hour and that he was "working for Aetna Casualty and Surety Company" during the time of the investigation. Bills for his services which had been submitted to Aetna for the investigation were introduced through Mr. Lewis.

 While it is true that extrajudicial statements of an alleged agent cannot prove the agency relationship, the testimony of the alleged agent is competent to prove agency.

In *Harvey and Claxton v. Sweasy*, 23 Tenn. 449 (1844), a creditor alleged that Sweasy had signed a promissory note, not only on his own behalf but also as agent of the Harvey and Claxton firm. The court was concerned that Sweasy had an interest in providing up his agency. In that regard, the court said:

> And we are of opinion that he was not competent; but not upon the ground that an agent can not prove his own agency, because, if such agency did not exist, he could in some mode be made liable to the plaintiff. For it has been long and well settled, upon grounds of policy and necessity, that an agent, notwithstanding such interest, may prove what he did, and his authority for doing it. But the incompetency in this case arises from his being a joint promissor.

*Id.* at 450.

In *Bozeman v. Naff*, 5 Tenn.App. 77 (1927), where a purported partner testified as to the partnership and thereby his agency to hire a stenographer, the court stated: "The agent is a competent witness to prove the existence of his authority in what he did." *Id.* at 80. *See, also, Wade v. Whitsitt*, 9 Tenn.App. 436 (1928).

 In the instant case the testimony of Mr. Lewis is uncontradicted and creates a prima facie case for the existence of an agency relationship between Aetna and Lewis.

However, even though agency is established, there is a further burden on plaintiff as is set out by our Supreme Court in *Hudson v. Philadelphia Life Insurance Co.*, 152 Tenn. 691, 702–703, 280 S.W. 403, 406 (1926):

> The rule is well settled that the liability of a principal for the act of his agent in instituting a malicious prosecution or causing a false arrest or imprisonment is dependent upon whether the principal previously authorized or subsequently ratified it, or whether the act was within the scope of the agent's employment. If previously authorized or subsequently ratified, or if within the scope of the agent's employment, the principal is liable; otherwise, he is not. [Citations omitted.]

In *Russell v. Palatine Ins. Co.*, 63 So., 644, 106 Miss. 290, 51 L.R.A. (N.S.) 471, it was held that the agent of an insurance company who has authority to settle the accounts of another agent of a common employer has no implied authority to institute criminal proceedings against him for embezzlement, so as to render the employer liable for malicious prosecution of his act in so doing.

The question is then, did Lewis as an arson investigator employed by Aetna have the authority to instigate criminal proceedings against persons suspected of committing crimes while allegedly attempting to defraud Aetna.

Plaintiff has presented no evidence that Lewis had any such authority whether expressed, implied, or apparent, or that Aetna ratified Lewis' actions. In the absence of any such evidence, this Court must affirm the judgment of the Trial Court in directing a verdict for Aetna.

It therefore results that the action of the Trial Judge in directing a verdict for defendant Aetna is affirmed and his action in directing a verdict for defendant Lewis is reversed. The cause is remanded to the

Circuit Court for any further necessary proceedings. The costs of this appeal are taxed one-half to plaintiff and one-half to defendant Lewis.

TODD, P.J. (M.S.), and CONNER, J., concur.