IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 1, 2021

## KENNETH J. MYNATT v. NATIONAL TREASURY EMPLOYEES UNION, CHAPTER 39 ET AL.

**Appeal from the Circuit Court for Rutherford County**
**No. 75CC1-2020-CV-77158          Darrell Scarlett, Judge**

_____

### No. M2020-01285-COA-R3-CV
_____

This case involves claims of malicious prosecution and civil conspiracy. The trial court dismissed the claims pursuant to Tennessee Rule of Civil Procedure 12.02(6), determining that the plaintiff could not prove that the underlying criminal prosecution had terminated in his favor, a necessary element of a malicious prosecution claim. Regarding the civil conspiracy claim, the court determined that the conspiracy claim was only actionable if the underlying tort were actionable. Having found that the malicious prosecution claim could not stand, the court concluded that the conspiracy claim had to be dismissed as well. The plaintiff timely appealed. Based upon the applicable standard of review, we conclude that the trial court erred in dismissing the plaintiff's claims, and we accordingly reverse the judgment of dismissal and remand this matter to the trial court for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which W. NEAL MCBRAYER and KENNY W. ARMSTRONG, JJ., joined.

Daniel A. Horwitz and Lindsay B. Smith, Nashville, Tennessee, for the appellant, Kenneth J. Mynatt.

Leon Dayan and Elisabeth Oppenheimer, Washington, D.C., and Anthony A. Orlandi, Nashville, Tennessee, for the appellees, National Treasury Employees Union; National Treasury Employees Union, Chapter 39; John Van Atta; Anthony Reardon; and Colleen Kelley.

## OPINION

### I. Factual and Procedural Background

On April 29, 2020, the plaintiff, Kenneth J. Mynatt, filed a complaint in the Rutherford County Circuit Court ("trial court") against the following defendants: National Treasury Employees Union ("the Union"); National Treasury Employees Union, Chapter 39 ("Chapter 39"); John Van Atta; Anthony Reardon; and Colleen Kelley (collectively, "Defendants").[1]   Mr. Mynatt asserted that he had been a full-time bargaining unit employee of the United States Department of Treasury, Internal Revenue Service ("IRS") since 1991.  As such, Mr. Mynatt had the option of being a member of the Union.  Mr. Mynatt stated that after joining the Union, he was assigned to Chapter 39, which was headquartered in Nashville.

Mr. Mynatt further asserted that in September 2009, he ran for the office of executive vice-president of Chapter 39 and was elected to a three-year term.  Chapter 39 members concomitantly elected Mr. Van Atta as president.  According to Mr. Mynatt, Mr. Van Atta and he were assigned as full-time stewards of Chapter 39, which represents approximately 600 bargaining unit employees in Tennessee, and Mr. Van Atta appointed himself as bookkeeper and treasurer for Chapter 39.  Mr. Mynatt averred that only Mr. Van Atta and he maintained authority to sign checks for Chapter 39 or use its debit card, although Mr. Van Atta had sole possession of those items.

Mr. Mynatt claimed that Mr. Van Atta removed him from his stewardship position on July 13, 2011, following Mr. Mynatt's involvement in ongoing, publicized criticism of IRS management as well as Ms. Kelley, the Union's then-president, regarding alleged financial waste.  According to Mr. Mynatt, Mr. Van Atta subsequently accused him of misuse of the Union's funds.  Mr. Mynatt averred that although he was indicted by the State District Attorney General's office and charged with two felonies based on information purportedly stemming from Mr. Van Atta, those charges were later "retired" for a one-year period and subsequently dismissed on November 28, 2016.

Mr. Mynatt stated that he filed an action in federal district court on November 14, 2017.  The federal court dismissed the action, however, on June 10, 2019, and refused to exercise supplemental jurisdiction over Mr. Mynatt's state law claims against Defendants.  Mr. Mynatt therefore alleged that his complaint was timely pursuant to Tennessee Code Annotated §§ 28-1-105 and -115.  Mr. Mynatt asserted claims of malicious prosecution and civil conspiracy, seeking awards of compensatory and punitive damages as well as attorney's fees.

---

[1] Mr. Reardon is identified in the complaint as the current president of the Union.

On June 22, 2020, Defendants filed a motion to dismiss, contending that Mr. Mynatt's complaint failed to state a claim upon which relief could be granted. Mr. Mynatt filed a response opposing dismissal. The trial court conducted a hearing on August 7, 2020, and ruled from the bench at the conclusion of the hearing, dismissing Mr. Mynatt's claims.

The trial court entered an order of dismissal on September 8, 2020. In its order, the trial court stated: "To establish a malicious prosecution claim, a plaintiff must show that the underlying action terminated in the plaintiff's favor on the merits." The court found that upon taking Mr. Mynatt's allegations as true, the disposition of his criminal charges did not support a malicious prosecution claim because a "retirement" of charges was akin to a pretrial diversion or a suspension of the charges, subject to revival at any time. The court further found that even if the charges were dismissed following retirement, such did not constitute a determination on the merits.

In addition, the trial court determined that the conspiracy claim was only actionable if the underlying tort were actionable. Having adjudged that the malicious prosecution claim could not stand, the court concluded that the conspiracy claim had to be dismissed as well. The court accordingly granted Defendants' motion and dismissed Mr. Mynatt's claims. Mr. Mynatt timely appealed.

## II. Issues Presented

Mr. Mynatt has raised the following issues for our review, which we have condensed and restated slightly:

1. Whether the trial court erred in determining that Mr. Mynatt failed to state a claim of malicious prosecution.

2. Whether the trial court erred in determining that the intermediate retirement of Mr. Mynatt's criminal charges prior to dismissal of the charges did not constitute a termination in his favor.

3. Whether the trial court erred in dismissing Mr. Mynatt's claims of malicious prosecution and civil conspiracy.

Defendants raise the following additional issues, which we have likewise restated slightly:

4. Whether Mr. Mynatt's malicious prosecution claim also fails because he failed to allege that Defendants procured a prosecution without probable cause.

5.      Whether Mr. Mynatt's civil conspiracy claim also fails because he failed to allege that Defendants had a common design to accomplish an unlawful purpose.

## III. Standard of Review

As our Supreme Court has explained concerning motions to dismiss for failure to state a claim under Tennessee Rule of Civil Procedure 12.02(6):

> A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010) (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 516 (Tenn. 2005)).

> In considering a motion to dismiss, courts "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007) (quoting *Trau-Med [of Am., Inc. v. Allstate Ins. Co.]*, 71 S.W.3d [691,] 696 [(Tenn. 2002)]). A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002). We review the trial court's legal conclusions regarding the adequacy of the complaint de novo.

*Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (other internal citations omitted).

## IV. Malicious Prosecution Claim

The overarching issue raised by Mr. Mynatt concerns the propriety of the trial court's dismissal of his malicious prosecution claim. The court found that upon taking Mr. Mynatt's allegations as true, the disposition of his criminal charges did not support a malicious prosecution claim because a "retirement" of charges was, in essence, a temporary suspension of the charges subject to revival at any time. The court further concluded that even though the charges were ultimately dismissed following retirement, such did not constitute a determination on the merits. Mr. Mynatt argues that the trial court erred in its determination because certain dispositions other than an acquittal can

support a subsequent malicious prosecution action, such as when the charge is dismissed for lack of proof or the court enters a judgment of *nolle prosequi*. Defendants contend that termination of the underlying action must in some way reflect the criminal defendant's innocence and that the dismissal in this matter failed to do so.

A malicious prosecution claim may be brought with respect to an underlying criminal prosecution or civil lawsuit, and the essential elements of the claim are:

(1)     a prior suit or judicial proceeding was brought against the plaintiff without probable cause,

(2)     the defendant brought such prior action with malice, and

(3)     the prior action was finally terminated in favor of the plaintiff.

*Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn. 1992).[2] This Court has previously acknowledged that the question of whether the underlying proceedings terminated in favor of the plaintiff "involve[s] mixed questions of law and fact that present no jury issues unless there are disputed facts." *Sewell v. Par Cable, Inc.*, No. 87-266-II, 1988 WL 112915, at *2 (Tenn. Ct. App. Oct. 26, 1988). "While the circumstances under which the underlying proceeding were terminated are questions of fact for the jury, whether the proceedings were terminated favorably is a question of law for the court." *Id.* Moreover, the plaintiff has the burden of proving that the underlying action was terminated in his or her favor. *Id.*

We agree with Mr. Mynatt's contention that there are outcomes other than an acquittal following trial that can constitute a favorable termination of underlying proceedings for purposes of a malicious prosecution claim. Examples include (1) dismissal of a criminal warrant by a magistrate for lack of proof, *see Williams v. Norwood*, 10 Tenn. 329, 329 (1829), and (2) entry of a judgment of *nolle prosequi*, which effectively provides that the charges will not be further prosecuted, *see Scheibler v. Steinburg*, 167 S.W. 866, 867 (Tenn. 1914). As this Court has previously recognized,

---

[2] Earlier precedent has listed four essential elements of a malicious prosecution claim:

> (1) the defendant instituted a criminal prosecution against the plaintiff; (2) the criminal proceeding was terminated in favor of the plaintiff; (3) the defendant lacked probable cause to institute the proceeding; and (4) the defendant acted maliciously or for some reason other than to bring the plaintiff to justice.

*Kerney v. Aetna Cas. & Sur. Co.*, 648 S.W.2d 247, 250-51 (Tenn. Ct. App. 1982) (quoting *Landers v. Kroger Co.*, 539 S.W.2d 130, 131-32 (Tenn. Ct. App. 1976)). We note that these listed elements are essentially the same as the list presented in *Christian* with the more recent list containing an addition of language pertaining to civil actions and a combination of the first and third elements above.

however, these dispositions share the following common elements: "First, each disposition goes to the merits of the charge; second, each disposition prevents the criminal charge from being revived without the institution of new proceedings; and third, each disposition indicates that the defendant was innocent of the charges." *Sewell*, 1988 WL 112915, at *3. Moreover, as our Supreme Court has elucidated, "abandonment or withdrawal of an allegedly malicious prosecution is sufficient to establish a final and favorable termination so long as such abandonment or withdrawal was not accompanied by a compromise or settlement, or accomplished in order to refile the action in another forum." *Christian*, 833 S.W.2d at 74.

By contrast, the *Sewell* Court instructed that "[a]n indecisive termination, without more, will not support a malicious prosecution action. The plaintiff must go further and present evidence concerning the circumstances surrounding and the reasons for the dismissal of the charges." *Sewell*, 1988 WL 112915, at *3 (ultimately determining that the plaintiff could not support a claim of malicious prosecution because he failed to establish that the underlying proceedings were terminated in his favor when the prosecutor and he had executed a memorandum of understanding resulting in dismissal). In addition, the following examples are demonstrative of outcomes that were determined not to satisfy the favorable termination requirement in a malicious prosecution action: (1) dismissal based on any type of plea, settlement, compromise, *see Landers v. Kroger Co.*, 539 S.W.2d 130, 133 (Tenn. Ct. App. 1976); *Collins v. Carter*, No. E2018-01365-COA-R3-CV, 2020 WL 1814905, at *5 (Tenn. Ct. App. Apr. 9, 2020); (2) dismissal contingent upon the accused's agreement to pay court costs because an innocent defendant cannot be taxed with costs, *see Cannon v. Peninsula Hosp.*, No. E2003-00200-COA-R3-CV, 2003 WL 22335087, at *2 (Tenn. Ct. App. Sept. 25, 2003); *Bowman v. Breeden*, No. CA 1206, 1988 WL 136640, at *2 (Tenn. Ct. App. Dec. 20, 1988); (3) dismissal based upon the unconstitutionality of a statute, *see Spurlock v. Pioneer Credit Co.*, No. 1386, 1991 WL 51404, at *2 (Tenn. Ct. App. Apr. 11, 1991); and (4) dismissal based upon double jeopardy, *see Foshee v. S. Fin. & Thrift Corp.*, 967 S.W.2d 817, 820 (Tenn. Ct. App. 1997).

In his complaint, Mr. Mynatt alleged that he was indicted via a sealed indictment and later arrested because Mr. Van Atta and other employees of the Union "created a false narrative, manufactured phony evidence, and tampered with witnesses as part of a conspiracy." Mr. Mynatt asserted that following his arrest, his attorney contacted the District Attorney's office and made prosecutors aware of the political nature of the charges as well as Mr. Mynatt's allegations of manufactured evidence. According to Mr. Mynatt, the District Attorney's office began to offer him a series of "deals" if he were willing to plead guilty to "ever decreasing misdemeanor crimes." Mr. Mynatt stated unequivocally that he refused all such deals.

Mr. Mynatt further stated in his complaint:

After Plaintiff's repeated claims of innocence, refusal to plead guilty or resign, and his continued demand for documents under the previously filed discovery request, [the District Attorney], on November 24, 2015, filed a motion in State court with Judge Seth Norman to "retire" all charges against Plaintiff for a one (1) year period. On November 28, 2016, all charges against Plaintiff were formally dismissed. The documents requested via the Plaintiff's discovery request were never produced during the pendency of the criminal case.

(Paragraph numbering omitted.)

The parties expend a great deal of effort in their appellate briefs presenting arguments concerning the implications of criminal charges having been "retired" in Tennessee. Mr. Mynatt contends that retirement of the charges was merely an intermediate step that had no bearing on the ultimate disposition of the charges and that retirement of criminal charges generally may be followed by a judgment of acquittal, dismissal, or conviction. Defendants insist that retirement of the charges was in the nature of a pretrial diversion, which would involve some manner of agreement or compromise by Mr. Mynatt.

As our Supreme Court explained approximately seventy years ago:

When the case is placed on the retired docket, as is frequently done by the courts of this State, in doing so the court in no way says that the case is dismissed or will not be further prosecuted. The case is merely retired until a time when the defendant may be brought into court and properly tried on the then pending indictment.

*State ex rel. Underwood v. Brown*, 244 S.W.2d 168, 171 (Tenn. 1951) (ultimately determining that placing the matter on the retired docket was not the same as entry of a *nolle prosequi* judgment). *See State ex rel. Lewis v. State*, 447 S.W.2d 42, 43 (Tenn. Crim. App. 1969) (explaining that a charge against the defendant was placed on the retired docket upon recommendation of the prosecutor).

In the case at bar, the trial court found as follows in its final order:

Mr. Mynatt alleges that, in or about March 2014, a Davidson County grand jury indicted him on two unspecified state felony crimes. According to the Complaint, on November 24, 2015, the State filed a motion to "retire" these charges for one year, and on November 28, 2016—just after that one-year period expired—those charges were dismissed. The Court agrees with Defendants that, even taking these allegations as true and drawing all reasonable inferences in Mr. Mynatt's favor, this disposition of Mr.

- 7 -

Mynatt's criminal charges cannot support a malicious prosecution claim as a matter of law. A retirement of charges is similar to a pretrial diversion of a charge; it is frequently "used in plea negotiations" and denotes a temporary suspension of charges for some period, during which the prosecution can revive the charge at any time. Tenn. Crim. Prac. & Proc. § 22:18, at 196-97. The retirement of criminal charges (even when followed by dismissal after a specified period) does not reflect a determination on the merits. It does not go to guilt or to innocence. Retirements are entered all the time for various reasons, and it is hardly ever stated in the order of retirement why they are done, <u>but the defendant and the State agree to retire their case</u>. A retirement does not reflect consideration by the Court or by a jury of any of the facts or evidence giving rise to the charge. Where there is no consideration of any of the facts or evidence, it cannot be a determination on the merits. Accordingly, there is no set of facts that Mr. Mynatt could prove that would make the retirement of the criminal charges against him a determination on the merits, which is a necessary element of a malicious prosecution claim. The Court finds the legal authority referenced by Defendants on this issue to be persuasive, and the Court is not aware of any cases reaching a contrary holding. Count I therefore must be dismissed as a matter of law.

(Internal citations to record omitted; emphasis added.)

We note that the trial court's analysis appears to assume that a retirement of criminal charges necessarily involves an element of compromise or agreement by the criminal defendant. We also acknowledge that retirement of charges appears to do so in certain cases. *See, e.g.*, *In re E.W.N.*, No. M2017-02463-COA-R3-JV, 2018 WL 6040893, at *9 (Tenn. Ct. App. Nov. 19, 2018) ("[C]harges were retired upon his completion of anger management classes."); *State v. Apple*, No. 01-C01-9209-CR-00273, 1993 WL 39760, at *2 (Tenn. Crim. App. Feb. 18, 1993) (explaining that charges were retired as part of plea bargain). However, we have been unable to locate any mandatory authority stating that a criminal defendant must agree before the charges against him or her can be retired.[3] In fact, in the *Lewis* case referenced above, the Court of Criminal Appeals noted that a charge against the defendant was placed on the retired docket "upon recommendation of the prosecutor." *See Lewis*, 447 S.W.2d at 43. *See also Richardson v. State*, 671 S.W.2d 865, 866 (Tenn. Crim. App. 1984) (noting that a charge had been placed on the retired docket "on motion of the state because of unavailability of evidence").

---

[3] Defendants rely upon *Anderson v. Wal-Mart Stores, Inc.*, No. 1:07-00024, 2008 WL 1994822, at *5 (M.D. Tenn. May 2, 2008), as support for their assertion that retirement of criminal charges is in the nature of pretrial diversion and cannot support a malicious prosecution claim. Respectfully, however, this Court is not bound by federal district court decisions. *Townes v. Sunbeam Oster Co., Inc.*, 50 S.W.3d 446, 452 (Tenn. Ct. App. 2001).

We reiterate that when reviewing the trial court's grant of a motion to dismiss, we are required to review the trial court's legal conclusions regarding the adequacy of the complaint *de novo*. *See Webb*, 346 S.W.3d at 426. In doing so, we are called upon to "construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Id*. We also emphasize that questions involving the "circumstances under which the underlying proceeding were terminated are questions of fact." *Sewell*, 1988 WL 112915, at *2.

In this matter, Mr. Mynatt asserted unambiguously in his complaint that he had refused all "deals" or agreements with the District Attorney concerning his criminal charges. Mr. Mynatt claimed that he was innocent of the charges and that the District Attorney was made aware of his claim that the evidence against him had been falsified. Taking these allegations as true, we find no basis for the trial court's determination that retirement of the charges against Mr. Mynatt was in the nature of pretrial diversion or that Mr. Mynatt had otherwise agreed to the retirement.

Significantly, the retirement of the charges brought against Mr. Mynatt was not the final disposition or termination of those charges. According to Mr. Mynatt's complaint, the charges were dismissed one year following the retirement. Although the complaint contains no other information concerning the dismissal, Mr. Mynatt maintained his innocence regarding the charges throughout the complaint. Therefore, although it is plausible that the charges were dismissed one year following retirement as some form of pretrial diversion or other situation involving Mr. Mynatt's compromise, as the trial court found, it is equally plausible that the charges were dismissed due to a lack of evidence. Of these alternatives, however, only the latter draws an inference in Mr. Mynatt's favor, as we are required to do. *See Webb*, 346 S.W.3d at 426.

Moreover, drawing this inference in Mr. Mynatt's favor results in the conclusion that Mr. Mynatt would be able to demonstrate a favorable termination of the underlying prosecution. *See Christian*, 833 S.W.2d at 74. If the charges against him were dismissed because of a lack of proof of his guilt, then such a termination would clearly be as favorable as those found in *Williams*, 1829 WL 515, at *1, and *Scheibler*, 167 S.W. at 867. Such dismissal would also go the merits of the charge, indicating Mr. Mynatt's innocence, and would prevent the charge from being revived. *See Sewell*, 1988 WL 112915, at *3. Furthermore, such termination would involve no element of compromise or settlement on Mr. Mynatt's part. *See Christian*, 833 S.W.2d at 74.

Based upon the standard of review applicable to the grant of a motion to dismiss, we conclude that the trial court erred by determining that Mr. Mynatt could prove "no set of facts in support of the claim that would entitle the plaintiff to relief." *See Webb*, 346 S.W.3d at 426. Mr. Mynatt sufficiently alleged in his complaint that the underlying proceedings terminated in his favor by asserting that the charges against him were

dismissed, that he was innocent of the charges, and that he entered into no deal or agreement with the prosecutor. We therefore conclude that the trial court's judgment granting Defendants' motion to dismiss must be reversed.

We recognize that Defendants have argued in their appellate brief that Mr. Mynatt demonstrated acquiescence to an "agreement" with the prosecutor because his attorney acknowledged during oral argument before the trial court that Mr. Mynatt had waived his right to a speedy trial during the criminal proceedings. Assuming, *arguendo*, that Mr. Mynatt did so, such a waiver of his constitutional right is not equivalent to a compromise resulting in dismissal and does not bear on his guilt or innocence. We determine this argument to be unavailing.

Defendants also claim that as an additional basis for dismissing Mr. Mynatt's malicious prosecution claim, the trial court should have determined that Mr. Mynatt failed to sufficiently allege that Defendants had procured a prosecution without probable cause.[4] Because the trial court failed to address this issue, however, we decline to make the initial ruling with regard to Mr. Mynatt's allegations concerning probable cause. *See Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976) ("This is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are presented and decided in the trial courts."); *In re Estate of Boykin*, 295 S.W.3d 632, 636 (Tenn. Ct. App. 2008) ("At the appellate level, 'we are limited in authority to the adjudication of issues that are presented and decided in the trial courts.'") (quoting *Dorrier*, 537 S.W.2d at 890). This issue is best addressed to the trial court upon remand.

We therefore reverse the trial court's grant of Defendants' motion to dismiss concerning Mr. Mynatt's malicious prosecution claim. Additionally, we remand this matter to the trial court for further proceedings.

## V. Conspiracy Claim

The trial court dismissed Mr. Mynatt's claim of civil conspiracy, determining that the conspiracy claim was only actionable if the underlying tort were actionable. Having determined that the malicious prosecution claim could not stand, the trial court concluded that the conspiracy claim had to be dismissed as well. However, inasmuch as we have reversed the trial court's dismissal of Mr. Mynatt's malicious prosecution claim, we will accordingly reinstate Mr. Mynatt's civil conspiracy claim for further proceedings in the trial court following remand.

Defendants argue that Mr. Mynatt's civil conspiracy claim should have been dismissed for the additional reason that Mr. Mynatt failed to allege that Defendants

---

[4] We note, however, that Mr. Mynatt did generally allege in his complaint that "Defendants without probable cause and with malice caused a criminal prosecution to be instituted or continued" against him.

maintained a common design to accomplish an unlawful purpose. Again, the trial court did not rule upon this issue, and we decline to make the initial ruling with regard to the sufficiency of Mr. Mynatt's allegations concerning a common design. *See Dorrier*, 537 S.W.2d at 890; *In re Estate of Boykin*, 295 S.W.3d at 636. This issue should also be addressed by the trial court upon remand.

## VI. Conclusion

For the foregoing reasons, we reverse the trial court's grant of Defendants' motion to dismiss and remand this matter to the trial court for further proceedings consistent with this opinion. Costs on appeal are assessed to the appellees, National Treasury Employees Union; National Treasury Employees Union, Chapter 39; John Van Atta; Anthony Reardon; and Colleen Kelley.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE